[Civ. No. 18467. First Dist., Div. One. Dec. 21, 1959.]

JEANESE, INC. (a Corporation), Appellant, v. SURETY TITLE AND GUARANTY COMPANY (a Corporation) et al., Respondents.

W. A. Lahanier and Darwin Bryan for Appellant.

Timothy A. O'Connor for Respondents.

BRAY, P. J.—Plaintiff appeals from a judgment in favor of defendants in an action (1) for damages based on a negligent reconveyance of real property and (2) on an account stated and breach of contract of settlement.

### Question Presented

Was defendant Surety Title Company's unauthorized reconveyance the proximate cause of any loss to plaintiff?

### Record

Builders Associates, Inc., executed a note to Crist and Jones, subsequently assigned to plaintiff, for $18,000, secured by a second deed of trust on the real property being thereby purchased. Defendant Surety Title was named trustee. Each parcel of the property was to be released upon payment of $3,600. In September, 1956, only two parcels remained unreleased, Lots 131 and 132. Plaintiff instructed Surety Title to reconvey Lot 131. Admittedly Surety Title also reconveyed Lot 132 without authorization. Thereafter the holder of the first deed of trust on Lot 132 published notice of default and of trustee's sale set for January 21, 1957. At least by January 19 plaintiff had learned of the impending foreclosure sale. At that time one Bisbee agreed in writing with plaintiff that Bisbee would bid in Lot 132 at the sale for a sum not less than the total due under the first and plaintiff's deeds of trust in consideration of plaintiff giving Bisbee 90 days to pay plaintiff the amount due it under its second deed of trust. Bisbee apparently was unable to find a record of plaintiff's deed of trust, and obtained a postponement for one day of the sale under the first deed of trust. On the day of the sale Bisbee notified plaintiff's attorney that he could find "no recording of the Second," plaintiff's deed of trust. On that day, although present at the sale, Bisbee did not bid. Plaintiff, relying on its agreement with Bisbee, did not appear at the sale.

Late in February plaintiff's president and its attorney first

learned of the unauthorized reconveyance of Lot 132. They then called upon the president of Surety Title who admitted that the reconveyance was erroneous and asked for time to obtain payment from the trustor, Builders Associates.

On March 8 plaintiff wrote Surety, attention of its president, calling attention to the unauthorized reconveyance and demanding payment of the principal and interest then due on its deed of trust. The president phoned plaintiff asking for more time. Plaintiff asked him to write a letter admitting liability and asking for the time. Thereupon the president wrote plaintiff stating "it appears that there is no question with regard to our liability. As I mentioned to you on the phone the other day, I would appreciate it if you would give us approximately 10 days in order to protect our position in the matter since we are unquestionably liable." Plaintiff again phoned the president asking "what he was going to do about it." The president asked for further time and was told "as long as he had admitted liability, why, we would go along and help him any way we could to recover from Builders Associates." Later Surety wrote plaintiff a letter denying any liability. Plaintiff has never received the $3,600 due on the note.

The court found that although Surety Title made a mistake in reconveying Lot 132, such mistake was not the proximate cause of plaintiff's loss, if any, but that the proximate cause was Bisbee's failure to bid as agreed with plaintiff. The court also found that there was no account stated or other contract of settlement.

### PROXIMATE CAUSE

Section 580b, Code of Civil Procedure, provides in part that no deficiency judgment shall lie in any event after any sale, under a deed of trust or mortgage, given to secure payment of the balance of the purchase price of real property.

If the plaintiff had lent to Builders Associates the sum of $3,600, taking in return a promissory note secured by a second deed of trust on Lot 132, the transaction not being a purchase money transaction, the plaintiff would have had two legally recognized rights: (1) a debt due from Builders Associates evidenced by the promissory note, and (2) an interest in Lot 132, presumably worth $3,600, securing the payment of the debt. In a purchase money transaction, however, the plaintiff does not have the first right, but only the second, namely: a $3,600 interest in Lot 132. If in the first

case the title company, having ostensible authority to do so, improperly releases the deed of trust, the first right, the debt, remains and the plaintiff is damaged only to the extent that he is unable to collect; in the second instance, since there is no debt, the title company has conveyed away the only interest that the plaintiff has. For that breach of its duty, it should be liable to the plaintiff for the full amount of plaintiff's loss, namely, the $3,600 interest that the title company has conveyed away. The only defense that should be open to the title company would be to show that plaintiff had in fact suffered no loss, or less than $3,600 loss, by showing that the plaintiff's interest in Lot 132 was in fact worth less than $3,600, or of no value, and the burden should be on the title company to show that such was the fact.

■ "[T]he general rule is that where a note or other money securities have been converted, 'their owner is, prima facie, entitled to recover their face value with interest.' (4 Sutherland on Damages, 4th ed., § 1132.)" (*Revert* v. *Hesse,* 184 Cal. 295, 303 [193 P. 943].)

We think that by analogy the same rule should apply in the peculiar circumstances of this case, although what the title company did was not technically a "conversion."

■ It is no answer to say that plaintiff could have had its interest in Lot 132 restored by an action in equity, or could have protected itself by bidding at the sale under the first trust deed. Whatever it might have to bid over the amount of the first trust deed would go to the legal owner, unless the plaintiff, in a lawsuit, could establish its right to the money.

If A entrusts B with a chattel, and B sells it to C without authority, it is no answer, in a suit by A against B, for B to say that A could have recovered it, in another lawsuit, from C. Why should the rule be different in this case?

Surety Title attempted to meet its burden of showing that plaintiff in fact suffered no loss merely by contending that plaintiff's loss was not due to it but to Bisbee's failure to bid. Such, however, is not the fact.

■ Ordinarily where the security is lost or has become valueless, an independent action may be maintained on the debt. (*Brown* v. *Jensen* (1953), 41 Cal.2d 193, 195-196 [259 P.2d 425].) But where the security is a purchase money deed of trust or mortgage, the lender must look solely to the security itself, i.e., the land, and no personal judgment may be recovered. ■ Also where the purchase money deed of trust

is second to a deed of trust already of record, and the first deed of trust is being foreclosed, the holder of the second must either pay off the first or bid at the foreclosure sale the full amount of the indebtedness due on the first; otherwise the purchaser at the sale obtains the property free of the lien of the second. Thus, ordinarily, if the holder of the second fails to bid at such sale he has no way of recovering the debt for which the second was given as security.

Here, plaintiff, the holder of the second, did not bid. However, plaintiff had entered into an agreement with Bisbee by which the latter was to bid in the property for the amounts due on both deeds of trust, and was to repay to plaintiff over a short period of time the amount due on its deed of trust. If the record shows that the reason Bisbee did not perform his contract (and an adequate reason it would be to justify him in not performing) was the fact of the improper reconveyance by Surety, then the proximate cause of plaintiff's loss was the improper reconveyance. Plaintiff had a right to rely upon the Bisbee contract, and hence plaintiff's failure to be present at the foreclosure sale and bid, was not the proximate cause of plaintiff's loss.

Unfortunately the record is very meager upon this question. Bisbee could not be located and did not testify. Plaintiff's attorney and assistant secretary is the only one who testified on the subject. All he said upon the subject was: "Mr. Bisbee apparently went to his Title Company or to the County Recorder's office in order to find out the amount actually due on that Second, on our Second, and could find no recording of the Second, and he so advised Crist [plaintiff's attorney], I believe, on the day of the sale—on the date that the sale was to be held on January 21st and told Mr. Crist that because they couldn't find a record of that they had been able to get the sale postponed for one day. . . . I don't know where he went, but I know he reported back that there was no record of any Note secured by a Deed of Trust on Lot 132. Whether he got that from his Title Company or from the Recorder's Office, I don't know." As the second deed of trust and reconveyance were of record, it is probable that this was a layman's way of stating that there was no lien of the second deed of trust of record, because of the reconveyance. No objection was raised to this testimony as to what Bisbee had reported about the deed of trust.

The trial court did not find on this question, nor is a finding presumed because the court found that the proximate cause of

plaintiff's damage, if any, was Bisbee's failure to carry out his agreement, without finding whether Bisbee's information justified that failure. Because of the reconveyance there was no lien of record, and although plaintiff had an equitable title as against the trustor, Bisbee, had he bid, would have been at the very least buying a lawsuit, and therefore was justified in not performing his agreement with plaintiff. Meager though the evidence was, it was sufficient in the absence of contradictory evidence to require a finding that the unauthorized reconveyance was the proximate cause of plaintiff's loss.

As to the second cause of action,—an account stated and a breach of a contract of settlement, the court erred in finding adversely thereto. There can be no question but that defendant's letter of March 15 taken with plaintiff's letter of March 8, constituted an account stated and an agreement to pay the amount demanded in the former letter. Plaintiff's letter stated: ". . . demand is made on your corporation for $3,600.00, plus interest thereon at the rate of 6% per annum from August 25, 1956 until paid." Defendant's reply thereto stated "there is no question with regard to our liability . . . I would appreciate it if you would give us approximately 10 days in order to protect our position in the matter since we are unquestionably liable."

 "Matured debts are discharged by a manifestation of assent in good faith by debtor and creditor to a stated sum as an accurate computation of the amount of the matured debt or debts due the creditor. . . . A new duty arises to pay a sum so fixed." (Rest., Contracts, § 422, pp. 793-794.) "It is not essential that an account shall be stated in a particular form. Any evidence indicating assent by a debtor to his creditor that a stated amount is that due the creditor, is ground for implying a promise by the debtor." (*Idem*, p. 795.) "The acknowledgment of a debt, though it consists of but a single item, may form the basis of such a stated account." (*Gardner* v. *Watson* (1915), 170 Cal. 570, 574 [150 P. 994].)

 Defendant contends that there was no preexisting obligation and hence there could be no account stated as that is one of its necessary elements. (*Gallwey* v. *Castlehun* (1917), 35 Cal.App. 589 [170 P. 657]; *Wine Packing Corp. of Calif.* v. *Voss* (1940), 37 Cal.App.2d 528 [100 P.2d 325].) Certainly defendant's unauthorized reconveyance created the obligation to pay plaintiff any damage caused plaintiff thereby, and, as we have pointed out, under the circumstances of this case

plaintiff's damage was the amount of the note secured by the deed of trust and interest, which is the exact amount stated in plaintiff's letter and agreed to by defendant Surety Title.

Defendant Pacific Title Insurance Company underwrote defendant Surety Title's policies. A pretrial conference determined that this action is not based on any policy nor was the complaint based upon the theory of an action on any policy. The record contains no indication that defendant Gray individually was responsible for, directed or participated in the unauthorized reconveyance. Hence the judgment in favor of defendants Pacific Title Insurance Company and Gray was proper, and is affirmed.

The judgment in favor of defendant Surety Title and Guaranty Company is reversed.

Tobriner, J., and Duniway, J., concurred.

The petition of respondent Surety Title & Guaranty Company for a hearing by the Supreme Court was denied February 17, 1960.