[Sac. No. 1646.   Department Two.—March 18, 1909.]

## RECLAMATION DISTRICT NO. 535, by George Swanston et al., Trustees, Respondent, v. ANNA E. CLARK, Appellant.

Reclamation District—Repair of Break in Levee—Power of Trustees to Contract.—Under section 3459 of the Political Code, the board of trustees of a reclamation district, the original plan of reclamation of which had been carried out and completed, has authority to enter into contracts to close a subsequent break of about fifteen hundred feet in its levee, without first submitting the plan of the work to the board of supervisors. Such work is a "repair" within the meaning of that section.

Id.—Statement to Board of Supervisors—Revision of Cost of Work.—Under that section, when the board of trustees has presented to the board of supervisors a statement of such repair work done or to be done, and its estimated cost, and has applied for the appointment of commissioners to assess such cost upon the lands within the district, the board of supervisors has no power to review or modify the terms of the statement, and its refusal to hear evidence concerning the subject-matter thereof is without prejudice to an owner of land assessed for the cost of the work.

Id.—Trustee Benefited by Repair—Fraud.—The fact that one of the trustees of the reclamation district would be specially benefited by the repair of the levee would not in itself constitute fraud on the part of himself or his associates, especially if he did not become a trustee until after the original contract for the repair had been made. There is nothing illegal in a landowner acting as trustee when reclamation works are in course of construction.

Id.—Trustee as Overseer of Work—Payment for Services—Legality of Assessment.—The fact that one of the trustees of the district acted as an overseer under the contractor doing the work of repair, and received about two hundred dollars in payment therefor, did not invalidate the assessment for the cost of the repair, when his claim for services is allowed after the statement and report for fixing the amount of the assessment was filed. Under section 3454 of the Political Code, the trustees have power to fix their own compensation.

Nonsuit—Failure to Rule on Motion—Harmless Error.—The failure of the trial court to formally rule upon a motion for nonsuit, after having taken it under advisement, even if error, was harmless, when there was no merit in the motion.

Id.—Action to Enforce Assessment—Collateral Attack on Manner of Work.—In an action to enforce an assessment for the cost of such repairs, it was not error to refuse to permit collateral attack upon the findings of the trustees that the work was properly performed. Warrants duly issued by the trustees for the work, and approved by the board of supervisors, as required by section 3456 of the Political Code, are not subject to such a collateral attack.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order refusing a new trial. N. D. Arnot, Judge presiding.

The facts are stated in the opinion of the court.

Chauncey H. Dunn, and William M. Sims, for Appellant.

Philip S. Driver, and A. L. Shinn, for Respondent.

MELVIN, J.—This is an action by a reclamation district to enforce payment of an assessment levied against the lands of appellant. Judgment was for plaintiff. This appeal is from the judgment and from the order denying defendant's motion for a new trial. It appears that this reclamation district was organized in 1891. The original plan of reclamation, with several modifications, was carried out and the work was completed prior to 1904. In February of that year, about fifteen hundred feet of the levee was washed out, and the trustees of the district thereafter entered into certain contracts for the repair of this crevasse. The trustees caused warrants of the district to be issued in payment for the work done under these contracts. The warrants called for the payment of something more than ninety-four thousand dollars, and they were issued and delivered prior to June 10, 1904. On the last-mentioned date, the trustees filed with the board of supervisors of the county of Sacramento a petition setting forth the fact that original plans and estimates for the work of reclamation and its cost had been theretofore approved by the board of supervisors; that the original assessment and various subsequent assessments had been duly levied upon the lands of the district; and that the amounts collected had been spent in the work of reclamation, which had been completed in accordance with the original plans. The petition also described the break in the levee occurring in February, 1904; and alleged the necessity for immediate repair of the levee according to the original plans of the district. A statement that the work was almost completed also appeared in the petition, and the petition contained an averment that there were outstanding warrants for $94,377.48 issued in payment for said work. In the petition was the further statement that the additional sum of $34,500 would be necessary to complete the work of restoring the levee to its original condition, and that the incidental expenses would amount to $6,122.52, the three sums mentioned making a total of $135,000. Upon the day of the presentation of the petition to the board of supervisors, several of the owners of land in the district appeared by their attorneys and asked for a postponement in order that they might voice their objections to the assessment. The requested delay was refused, and the board of supervisors made an order approving the statement, report, and estimate of the trustees

of the reclamation district, and appointing three commissioners of assessment. Upon the report of these commissioners, or their successors, was based the designation of the amounts due from the various property owners.

There are a number of assignments of error, but only a few of them received notice either in the briefs or at the oral argument. Of these, the first is the contention of appellant's counsel that the board of trustees acted beyond their authority in entering into contracts to close the crevasse in the levee; that the warrants issued for payment of the indebtedness constitute no claim against the district; and that therefore the assessment levied to pay these illegal warrants is null and void. The theory of appellant's counsel is that the new work was not a mere repair, but was something arising under a new and unexpected contingency, necessitating an additional and supplemental plan for the reclamation of the lands of the district. This, they say, brings the matter under section 3455 of the Political Code, and requires the submission of the plan to the board of supervisors as a prerequisite to the prosecution of the work. Without considering whether or not section 3455 of the Political Code would thus limit the jurisdiction of the trustees of the district, we feel impelled to accept respondent's theory that section 3459 of the Political Code must prevail. That section is as follows:—

"If the original assessment is insufficient to provide for the complete reclamation of the lands of the district, or if further assessments are from time to time required to provide for the protection, maintenance, and repair of the reclamation works, the trustees must present to the board of supervisors of the county in which the district is situated, or if the district is situated in more than one county, then to the board of supervisors of the county in which the greater portion of the lands in said district are situated, a statement of the work done or to be done, and its estimated cost, and such board must make an order directing the commissioners who made the original assessment, or other commissioners, to be named in such order, to assess the amount of such estimated cost as a charge upon the lands within the district, which assessment must be made and collected in the same manner as the original assessment."

The application to the board of supervisors was in the form required by the above section, and the board of supervisors.

found that the additional and supplementary assessment was required for "the protection, maintenance, and repair" of the reclamation works of the district. *Santa Cruz R. P. Co.* v. *Broderick,* 113 Cal. 633, [45 Pac. 863], is cited in opposition to the contention that the mending of the break in the levee was a work of "repair." The doctrine of that case does not seem to us to be applicable here. In that case the work did not even purport to be repairs upon the street, but a contract was made between the city and the plaintiff whereby the street was to be paved with bituminous rock for a number of blocks. There was no advertisement for bids, and none of the acts required to give the city jurisdiction of the subject-matter was performed. The mere fact that the break in the levee of this reclamation district was a large one did not remove the work of closing it from the category of "repairs." It has been held that the replacing of a worn-out superstructure upon the unimpaired piers and abutments of a bridge should be construed as a "repair" under the terms of a statute requiring counties to keep certain bridges "in repair." (*Howe* v. *Commissioners of Crawford County,* 47 Pa. St. 362. See, also, *Heath* v. *Manson,* 147 Cal. 700, [82 Pac. 331].) The power to repair having been given to the trustees of the district, and the sort of repairs required upon reclamation works being frequently extensive and arising under circumstances of pressing emergency, it follows that the authority of the trustees must be quite broad. That independent action on the part of the trustees of the district is contemplated, is shown by the phraseology of section 3459 of the Political Code, wherein the trustees are required to present to the board of supervisors a statement of the work *"done* or to be done." This provision negatives the theory that the landowners in the reclamation district are entitled to the advice of the members of the board of supervisors before any new work is done.

Appellant assigns as error the refusal of the board of supervisors upon application for the appointment of commissioners, to hear complaints of owners of property within the district, and the exclusion of evidence of this fact at the trial is also made a subject of complaint. The record shows, however, that both Mr. Dunn and Mr. Shinn testified with reference to the session of the board of supervisors in which this matter came up. The latter testified that Mr. Dunn asked for a con-

tinuance of the matter so that he might produce witnesses and might contest the petition. He asserted that Mr. Dunn did not ask the board to have any witnesses sworn at that time and did not offer to introduce any testimony. Mr. Dunn's account of the matter agrees with that of Mr. Shinn, but contains the additional statements that he had learned but a few minutes before the time of its presentation that the report was to be offered that day; and that he told the supervisors of the desire of his clients to object to the amounts of the assessment, to the bills rendered, to the indebtedness stated, and to the alleged facts set up in the petition. He also stated that the member making the motion to adopt the report expressed the opinion that the board had nothing to do with the facts—that the report spoke for itself. We find no provision in the statute requiring the board to hear testimony in such matters, and we cannot, without placing something in the statute which is not there set down, hold that the board of supervisors has power to modify the terms of the report or statement mentioned in section 3459 of the Political Code. No machinery is provided by law for notice, hearing of testimony, or findings, such as is usually furnished in instances of the board's exercise of judicial functions or the employment of its discretion in matters involving questions of disputed fact. The statute gives the trustees power to order repairs, and, as an incident of this power, they may enter into contracts for such work. Having the authority, they can extend the time of contractors, as they did here, and can enter into new agreements for labor and material. This may be a dangerous power to bestow upon them, but the legislature has seen fit to give it to them. They have a wide discretion, and apparently the supervisors are not clothed with authority to review it.

It may be that trustee Swanston had a special reason for desiring to close the break in the levee, and that he would be more benefited than other landowners by the completion of this protecting embankment. This in itself would not constitute fraud on the part of himself or his associates, especially in view of the circumstance that Swanston did not become a trustee until after the original contract for the repair of the levee had been made. There is nothing illegal in a landowner acting as trustee when reclamation works are in course of construction. (*Reclamation Dist. No. 531* v. *McCullah.* 124 Cal.

175, [56 Pac. 887]. See, also, *Capital Gas Co.* v. *Young,* 109 Cal. 140, [41 Pac. 869].)

It appears that Trustee Cox acted as day overseer under Clark and Henery, the contractors having in charge the restoration of the levee, and that he received payment therefor in the sum of $215.50. This does not invalidate the assessment, for the only claim in behalf of Cox was allowed after the statement and report for fixing the amount of the assessment was filed. The trustees have power to fix their own compensation. (Pol. Code, sec. 3454.)

The court reserved its ruling on defendant's motion for nonsuit, and no ruling was ever formally made upon this motion. Appellant assigns this as error, citing *Raymond* v. *Glover,* 122 Cal. 477, [55 Pac. 398]. It appears, however, that both parties demanded a judgment on the merits by final submission of the cause. Even if we concede that there was error, it was harmless, because there was no merit in the motion. (See *Vincent* v. *Pacific Grove,* 102 Cal. 405, [36 Pac. 773].)

Although the court refused permission for the introduction of evidence by defendant out of turn, with reference to the proceedings before the board of supervisors, there was evidence upon this subject at a later stage of the trial.

The trial court did not err in refusing to permit collateral attack upon the findings of the trustees that the work was properly performed. Warrants had been duly issued, and these had been approved by the board of supervisors. (Pol. Code, sec. 3456.) They were therefore immune from the sort of collateral attack which was attempted. (*County of Alameda* v. *Evers,* 136 Cal. 132, [68 Pac. 475]; *County of Santa Cruz* v. *McPherson,* 133 Cal. 282, [65 Pac. 574]; *McBride* v. *Newlin,* 129 Cal. 36, [61 Pac. 577].)

No other alleged errors seem to us of sufficient importance to warrant special mention. We have noticed all points to which our attention has been called in the briefs and have examined the transcript without finding any material departures from the proper procedure which would constitute substantial error.

The judgment and order are sustained.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.